IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **IRA WOLVERTON,** | CASE NO. 3:23 CV 1760 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **ANNETTE CHAMBERS-SMITH, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

### INTRODUCTION

*Pro se* Plaintiff Ira Wolverton, an inmate in the Toledo Correctional Institution ("ToCI"), filed this civil rights action under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction ("ODRC") Director Annette Chambers-Smith, ODRC Classification Operation Support Center Chief Jeff Mustard, ToCI Warden Kimberly Henderson, ToCi Mental Health Care Administrator Jori Anderson, ToCI Medical Health Care Administrator Hannah Kroggel, ToCI Mental Health Care Officials John Does #1-5, ToCi Medical Healthcare Officials John Does #6-10, and ToCI Protective Custody Officers John Does #11-15. Plaintiff alleges that while he was housed in Protective Custody l, he was assaulted by an inmate with a known history of extreme violence toward other inmates. He asserts Eighth Amendment claims for failure to protect, cruel and unusual conditions of confinement, and denial of medical care. He seeks monetary and injunctive relief.

#### BACKGROUND

Plaintiff alleges he is an inmate at ToCi, housed in the Protective Custody Unit. *See* Doc. 1. He does not indicate the reason he is housed in Protective Custody. He claims that on May 17, 2023, at approximately 7:16 p.m., inmate Edmond Hightower (another inmate in the Protective Custody Unit) attempted to murder him in the day room of that Unit. *Id.* at 5. Plaintiff states Hightower, a 6-foot 7-inch tall, 300-pound former boxer, began his unprovoked attacked on Plaintiff by continually punching him in the head and body until he collapsed toward the floor and began losing consciousness. *Id.* at 6. Plaintiff describes himself similar in body type to a person who is 5-feet, 8-inches tall and weighing 140 pounds. *Id.* at 8. He alleges the security cameras in the Unit will show that when he collapsed, Hightower dragged Plaintiff away from the wall and began choking him and that he lost consciousness. *Id.* at 6.

Plaintiff contends block officers witnessed the attack and issued a "man down" distress alarm for assistance. *Id.* Sergeant Klavinger was the first to respond; he unsuccessfully tried to stop Hightower from choking Plaintiff. *Id.* Other officers arrived to assist him, and eventually they were successful in separating Hightower from the Plaintiff. *Id.* Plaintiff regained consciousness but was confused and disoriented. *Id.* Hightower was taken to punitive segregation while Plaintiff was taken to the ToCI infirmary. *Id.* He states that medical staff did a "cursory inspection" of his injuries and sent him back to his housing unit. *Id.* at 6-7. He claims he suffered severe pain in his chest and abdomen for several weeks after the assault, blood in his urine for several days after the assault, and that he continues to suffer from headaches, dizziness, back pain, shoulder pain, elbow pain, and knee pain. *Id.* at 7.

Plaintiff claims ToCI regularly houses inmates in protective custody who have a history of violence toward other prisoners or mental health conditions which render them a danger to others

housed in the unit. *Id.* at 9-12. He states that although inmates in the unit generally have single cells, they share a common library and a common day room where inmates can mingle. *Id.* at 11. He states that he discovered from newspaper articles that Hightower had murdered his cellmate in the county jail. *Id.* He claims that another article on the murder noted Hightower had a history of mental illness and had once been found not guilty by reason of insanity of a weapons charge; Hightower was previously committed to a state psychiatric facility for three years. *Id.* at 8-9. Plaintiff claims violent inmates and those with documented mental illnesses who pose a threat to other inmates are supposed to be housed in a Residential Treatment Unit and not Protective Custody. *Id.* at 11. Moreover, he claims other inmates in the Protective Custody Unit alerted Mental Health Care Administrator Jori Anderson that Hightower was stalking other inmates in the unit and trying to catch them alone in their cells so he could attack them. *Id.* Plaintiff contends that despite these warnings and Defendants' knowledge of Hightower's prior violent behavior, Hightower had not been moved from Protective Custody to the Residential Treatment Unit. *Id.* at 12-13. Plaintiff alleges that this failure to take appropriate steps to protect him and other inmates in the Protective Custody Unit led to his attack. *Id.* Furthermore, he claims he fears for his life when Hightower is released from Extended Restrictive Housing. He believes Hightower will be returned to the Protective Custody Unit at ToCI. *Id.* at 13.

In his Complaint, Plaintiff asserts three causes of action under the Eighth Amendment. *See id.* at 14-18. First, he claims Defendants failed to protect him from a known threat given their knowledge of Hightower's prior violent behavior and the reports they received from inmates describing Hightower's erratic and predatory behavior leading up to the attack. *Id.* at 14-15. Second, Plaintiff objects to his conditions of confinement, claiming the prison's practice of housing inmates in Disciplinary Segregation, Limited Privileges Housing, and Limited Activities

3

Housing with inmates in Protective Custody shows deliberate indifference to the safety of the inmates in Protective Custody. *Id.* at 16-17. Third, he claims he was denied proper medical care after the attack. *Id.* at 17-18. He contends he should have been sent to the hospital or at least received follow up care for his injuries. *Id.* at 18. Plaintiff seeks monetary damages and an Order from this Court requiring the prison to house violent inmates in a separate housing unit from those inmates in Protective Custody. *Id.* at 19.

## STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal

4

conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### DISCUSSION

Although Plaintiff states an arguable claim against Henderson and Anderson, the same cannot be said for his claims against the remaining Defendants.

Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Chambers-Smith and Mustard are the ODRC Director and Classification Chief. There is no indication that they had any personal knowledge of Hightower's placement in the Protective Custody Unit or of the reports of Hightower's aggressive behavior toward other inmates leading up to his assault on Plaintiff. He fails to state a claim against Chambers-Smith or Mustard in their individual capacities.

Furthermore, Plaintiff fails to state a claim against Chambers-Smith and Mustard in their official capacities. A claim against a government official in his or her official capacity is the equivalent of a claim against the government entity they serve, in this case, the State of Ohio. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment is an absolute bar to the imposition of liability upon States. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

Similarly, Plaintiff does not include factual allegations suggesting which medical personnel were responsible for evaluating his medical condition after the attack and returning him to his housing unit. His identification of these individuals as John Does #6-10 is not sufficient to

hold any particular individual liable for his treatment. The Health Care Administrator, Hannah Kroggel, cannot be held liable simply because she supervises the medical department. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). Instead, "supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Id.* (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Consequently, unless the plaintiff's Complaint affirmatively pleads the direct involvement of the defendant in the allegedly unconstitutional action, the complaint fails to state a claim against that defendant and dismissal is warranted. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff does not allege any facts suggesting Kroggel was personally involved in the treatment of Plaintiff's injuries following the assault. She is dismissed from this action.

Finally, Plaintiff's general reference to John Does #1-5 Mental Health Officials and John Does #11-15 Protective Custody Officials is not sufficient to impose liability on any individual. He has not identified any wrongdoing by any particular person in these offices. These claims are also dismissed.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's claims against Annette Chambers-Smith, Jeff Mustard, Hannah Kroggel, and John Does # 1-15 be, and the same hereby are, dismissed pursuant to 28 U.S.C. §1915(e). This action shall proceed solely against Kimberly Henderson and Jori Anderson. And the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith; and the Court

FURTHER ORDERS that the Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon remaining Defendants Henderson and Anderson.

      s/ *James R. Knepp II*
      UNITED STATES DISTRICT JUDGE