IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **IRA WOLVERTON,** | CASE NO. 3:23 CV 1760 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **KIMBERLY HENDERSON, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

## INTRODUCTION

Currently pending in this civil rights action is Defendants Kimberly Henderson and Jori Lee's Motion for Summary Judgment (Doc. 17).[1] Plaintiff Ira Wolverton opposes. (Doc. 22). Defendants have not replied, and the time in which to do so has expired. L.R. 7.1(e). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons set forth below, Defendants' Motion is granted.

## BACKGROUND

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 alleging Defendants failed to protect him from violence at the hands of a fellow inmate. *See* Doc. 1. Specifically, Plaintiff was subjected to a violent attack by inmate Edmond Hightower on May 17, 2023, while both were housed in the Protective Control Unit at Toledo Correctional Institution ("ToCI"). *Id.* at 5-6. Plaintiff suffered severe and lasting injuries as a result of the assault. *Id.* at 6-7.

---

1. Jori Lee is formerly Jori Anderson. *See* Doc. 17-1, at 1; Doc. 1, at 1 (Complaint, naming Jori Anderson as Defendant). The Court will refer to her by her current last name herein.

Remaining in this case are Plaintiff's claims against Henderson, then-Warden of ToCI (Doc. 22-1, at 6), and Lee, a ToCI social worker who manages the Mental Health Clinic (Doc. 17-1, at 1).[2]

As part of her duties at the Mental Health Clinic, Lee answers kites[3] and other grievances addressed to the Clinic. *Id.* at 1. On May 16, 2023, the day before the assault, a different inmate, Richard Moore, sent Lee a kite expressing concern about Hightower. (Doc. 1-4). It stated:

> This is in regards to an inmate Hightower, I believe his name is. This guy was talking to an inmate yesterday making aggressive overtures like he wanted to fight but almost like he was playing. After the inmate got him away from him, he started stalking on the upper range as while the inmate was working out as though he was trying to catch him in the cell so he could go up in the cell on him. This is only ONE incident of which inmates have experienced around in this block over the last few days that have been making concern and this is the talk in the block right now.

*Id.* Lee responded three hours later: "Thank you. We will address it." *Id.* Lee avers that "staff in the Mental Health Clinic addressed this issue with Mr. Hightower and did not believe he posed a threat to others in his cell block." (Doc. 17-1, at 1); (Doc. 22-2, at 19-20). Hightower confirmed a liaison from the mental health office came to see him the day prior to the incident with Plaintiff. (Doc. 22-3, at 16). He explained: "They would just check on you periodically, make sure everybody is okay." *Id.* at 17. In response to a question about whether he was "doing okay that day," Hightower responded: "I believe so. I would tell her all the problems I would have experienced." *Id.*

Lee did not receive any correspondence from Plaintiff or any inmates other than Moore regarding Hightower on or before May 17, 2023. (Doc. 17-1, at 1-2). Nor did she recall any

---

2. On screening review, the Court previously dismissed Plaintiff's claims against all other Defendants pursuant to 28 U.S.C. § 1915(e). *See* Doc. 4.
3. "In prison parlance, the word 'kite' . . . refers to internal complaints, typically informal in nature, from prisoners to prison staff." *Peterson v. Foco*, 2010 WL 5058352, at *2 (W.D. Mich.) (collecting cases).

2

complaints from guards or other staff regarding Hightower. (Doc. 22-2, at 21). Lee did not have day-to-day contact with either Hightower or Plaintiff prior to May 17, 2023, nor did she recall any conversation with either prior to May 16, 2023. (Doc. 17-1, at 2); (Doc. 22-2, at 15-16). She did not recall having any discussions regarding Hightower before he arrived at ToCI. (Doc. 22-2, at 17). Lee testified that she reviewed the electronic mental health records of every inmate who was transported to ToCI, but did not recall specifically having any information that Hightower had murdered an inmate at the Cuyahoga County Jail. *Id.*

Hightower previously pled guilty to involuntary manslaughter based on an altercation that occurred while he was incarcerated in November 2020. *See State of Ohio v. Hightower*, No. CR-20-654439-A (Cuyahoga Cnty. Ct. C.P.); (Doc. 22-3, at 5-6). He was sentenced November 7, 2022. *See State v. Hightower*, No. CR-20-654439-A. Hightower suffered from schizophrenia, for which he took medication. (Doc. 22-2, at 7-8). He believed he was not receiving his medication in the Cuyahoga County Jail when the manslaughter occurred. *Id.* at 8-9. He was, however, taking his medication while at ToCI. *Id.* at 15-16.

Henderson was the Warden at ToCI at the time of the incident. (Doc. 22-1, at 6). She did not recall having met or interacted with Plaintiff or Hightower. *Id.* at 10. Henderson did not independently decide whether to place inmates into protective custody when they were transferred to ToCI, but rather, she received a list when an individual arrived stating whether the inmate should be in general population or protective custody. *Id.* Individuals in protective custody are generally those who need protection from the general population and include police officers, sex offenders, informants, and individuals who have a problem with gang members. *Id.* at 17. Henderson had no knowledge of why either Plaintiff or Hightower were in protective custody. *Id.* Henderson did not recall any problems with Hightower when he was initially placed in protective custody. *Id.* at 20.

3

She had not seen the kite Moore submitted and was not aware that Hightower had assaulted someone in the Cuyahoga County Jail. *Id.* at 22. Further, she testified she was not aware of any reason why Hightower attacked Plaintiff. *Id.* at 24.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any factual matter in dispute; the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Defendants contend they are entitled to summary judgment on Plaintiff's Eighth Amendment failure to protect claim because there is no evidence to establish either the objective

4

or subjective component of such a claim. They further contend they are entitled to qualified immunity. On the record before the Court, Defendants are entitled to summary judgment.

The Eighth Amendment's prohibition of cruel and unusual punishments requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation modified). This includes "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation modified). But not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

To establish an Eighth Amendment failure to protect claim, an inmate must show that prison officials acted with "deliberate indifference to a substantial risk of serious harm." *Id*. at 828 (citation omitted). Such a claim has both an objective and a subjective prong, requiring the plaintiff to demonstrate: "(1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 834). This standard entails "more than mere negligence" and instead is akin to "subjective recklessness as used in the criminal law." *See Farmer*, 511 U.S. at 835, 839-40.

*Objective Prong*

Defendants argue Plaintiff cannot establish the objective prong of his Eighth Amendment claim. Specifically, they contend Plaintiff never raised a concern for his safety, Defendants took reasonable measures to abate any risk, and there was no evidence Plaintiff was incarcerated under conditions posing a substantial risk of harm. (Doc. 17, at 5-6).

5

"To establish a constitutional violation based on failure to protect, a prison inmate first must show that the failure to protect from risk of harm is objectively 'sufficiently serious.'" *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 833). The risk to inmate health or safety must be "excessive." *Farmer*, 511 U.S. at 837. This objective prong "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. Courts recognize that "[p]risons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another." *Farmer*, 511 U.S. at 858 (Thomas, J., concurring); *see also Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (quoting *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004) ("[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more.").

"Even where a serious injury occurs, the objective prong of a failure-to-protect claim requires an analysis of the risk to the injured party *before* the alleged injury occurred. This analysis must consider the likelihood of harm to the injured party in the context of the circumstances that led to the injury." *Zakora v. Chrisman*, 44 F.4th 452, 469 (6th Cir. 2022) (emphasis added) (citing *Reedy v. West*, 988 F.3d 907, 909, 912-14 (6th Cir. 2021) (concluding that, although the plaintiff had suffered a "brutal assault" at the hands of his cellmate, the objective prong was not met because general disagreements between the cellmates before the incident did not present a substantial risk of harm)). In other words, the relevant constitutional "injury" is the exposure to an objectively excessive risk, "*not* any physical harm that befalls the inmate because of that risk." *Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 685 (6th Cir. 2024).

6

Nevertheless, "[i]n the abstract, one prison inmate's threat to the health and safety of another inmate is 'sufficiently serious' to satisfy this requirement." *Williams v. McLemore*, 247 F. App'x 1, 9 (6th Cir. 2007) (citing *Farmer*, 511 U.S. at 833). And the Sixth Circuit has found that "being housed with and attacked by an inmate who had recently been arrested for violent assault and had a history of serious mental illness [is] sufficient to fulfill the objective component of this analysis." *Richko v. Wayne Cnty.*, 819 F.3d 907, 916 (6th Cir. 2016); *see also Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (explaining the objective component is generally satisfied in inmate-on-inmate assault cases if attacker was known to be dangerous or had previously threatened or fought victim inmate).

The Court finds that under the facts presented here, the objective risk posed by Hightower was not sufficiently serious to satisfy the objective requirement of an Eighth Amendment claim. There was no specific complaint from Plaintiff or facts suggesting any fights between or threats exchanged between Hightower and Plaintiff. The attack Plaintiff uses to highlight Hightower's propensity for violence occurred two and a half years prior to the attack that occurred here. Plaintiff presents no other evidence of incidents involving Hightower, and Defendants point to evidence that they had received no other complaints from inmates or staff aside from the single note about non-specific threats from Moore. And although Plaintiff highlights Hightower's mental health issues, the evidence presented demonstrates Hightower was not taking his prescribed medication at the time of the first attack, but was taking it at the time of the second. The Court therefore finds, "the risk to [Plaintiff] *before* the alleged injury occurred" was not *objectively* sufficiently serious, notwithstanding the serious injury that ultimately occurred. *Zakora*, 44 F.4th at 469 (emphasis added); *Caraway*, 98 F.4th at 685. Nevertheless, as set forth below, even assuming *arguendo* that Plaintiff has presented sufficient evidence to establish a question of material fact on the objective

7

component of his claim (whether being housed with Hightower posed a "sufficiently serious" threat to Plaintiff's health and safety), as set forth below, his claim fails on the subjective component.

*Subjective Prong*

Defendants also contend Plaintiff has not pointed to evidence sufficient to establish a genuine issue of material fact regarding the subjective component of his Eighth Amendment claim. On this point, the Court agrees.

"Under this subjective deliberate-indifference standard, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety." *Rhodes v. Michigan*, 10 F.4th 665, 674-75 (6th Cir. 2021) (citation modified). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 675 (quotation omitted). Such awareness can be demonstrated through "inference from circumstantial evidence[,] . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citations omitted). Nevertheless, "a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." *Bishop*, 636 F.3d at 767 (citing *Farmer*, 511 U.S. at 841-42). "Because officers must consciously *know* of the risk, then, they do not violate the Eighth Amendment merely by negligently or recklessly overlooking it." *Lawler v. Hardeman Cnty.*, 93 F.4th 919, 927 (6th Cir. 2024) (citing *Farmer*, 511 U.S. at 837-38). Further, an officer will not be liable "if [he] responded reasonably" to a known risk, "even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 845.

8

Because each official's liability must be based solely on that official's own knowledge and actions, the Court must consider the subjective prong for each Defendant separately. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005).

**Henderson**

Defendants have pointed to evidence that Henderson did not recall having met or interacted with either Plaintiff or Hightower, did not know why Hightower was in protective custody, did not recall any problems with Hightower prior to the incident at issue, was not aware Hightower had previously assaulted someone while in the Cuyahoga County Jail, and did not see the kite submitted by Moore to Lee. (Doc. 22-1, at 10, 17, 20, 22).

Plaintiff responds that Henderson's "claim" she does not see why an inmate was placed in protective custody "strains credulity" and "assume[s] that the warden at [Hightower's prior institution] was not provided with a report as is required by the rules governing protective custody." (Doc. 22, at 5) (citing "53 CLS 11," which appears to reference an internal ODRC policy)[4]. He further argues it is "frightening," "strange," and "dangerous" that neither Henderson nor Lee had information that an incoming inmate previously killed someone while incarcerated. *Id.* at 6. He contends a review of Hightower's file "would indicate that he had murdered someone and that he was placed in protective custody as a result" and "[t]his would show . . . Lee and Henderson that he was ultra-violent." *Id.*

Although Plaintiff presents arguments about what he believes Henderson should have known, he points to no evidence that Henderson was subjectively aware of, and disregarded, an excessive risk to Plaintiff's safety. *See Bishop*, 636 F.3d at 767 ("[A] prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth

---

4. Plaintiff does not provide a copy of this policy or any other detail regarding it.

9

Amendment even if the risk was obvious and a reasonable prison official would have noticed it."). Plaintiff's assertions that Henderson's "claim" that she does not see why an inmate was placed in protective custody "strains credulity" or that her not having done so contradicts an internal ODRC policy are, at best, contentions that Henderson acted negligently, which is insufficient to satisfy the subjective standard of an Eighth Amendment deliberate indifference claim. *See Lawler*, 93 F.4th at 927 (an individual "do[es] not violate the Eighth Amendment merely by negligently or recklessly overlooking [a risk]"); *see also Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007)) ("[A] § 1983 claim may not be based upon a violation of state procedure that does not violate federal law."); *Sales v. Bowen*, 2019 WL 3500946, at *2 (N.D. Ohio) ("A claim that Defendants did not comply with prison policy is not enough to state a claim under § 1983. An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation."). And Plaintiff presents no evidence to contradict Henderson's sworn testimony on this point.[5] Henderson is entitled to summary judgment.

**Lee**

Defendants have further pointed to evidence that Lee did not have any discussions regarding Hightower before he arrived at ToCI, did not specifically recall having any information

---

5. Even assuming *arguendo* that Henderson was somehow aware of Hightower's past assault on an inmate resulting in death (as Plaintiff implies she should have been), that assault occurred in November 2020 and the assault on Plaintiff occurred in May 2023, over two years later. Such knowledge would arguably still fail to create an issue of fact regarding the subjective component of a deliberate indifference claim because knowledge that an inmate committed a violent offense two years prior (as is true of many prisoners) would not alone establish that Henderson was subjectively aware of, and disregarded, a specific risk that Plaintiff would be assaulted. *See Rhodes*, 10 F.4th at 675 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Grieveson*, 538 F.3d at 777 (quoting *Riccardo*, 375 F.3d at 525) ("[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more.").

that Hightower previously assaulted another inmate, and did not receive any correspondence from Plaintiff, inmates other than Moore, guards, or staff regarding Hightower prior to May 17, 2023. (Doc. 17-1, at 1); (Doc. 22-2, at 17, 21). Lee received the above-described kite from Moore expressing generalized concern about Hightower on May 16, 2023. (Doc. 17-1, at 1); (Doc. 22-2, at 19). And she testified that she reviewed the mental health records of every prisoner who arrived at ToCI. (Doc. 22-2, at 17). But the uncontroverted evidence also demonstrates that someone from the Mental Health Clinic addressed the issue with Hightower the same day and did not believe he posed a threat. (Doc. 17-1, at 1); (Doc. 22-2, at 20); (Doc. 22-3, at 16-17).

As he argued with Henderson, Plaintiff argues a review of Hightower's file would have shown Lee that he had assaulted and killed another inmate and was "ultra-violent." (Doc. 22, at 6). Plaintiff further contends information regarding Hightower's schizophrenia and medication "would also presumably be in his mental health records reviewed by Lee." *Id.* at 7. But mere speculation that this information would "presumably" be somewhere or that a proper review "would indicate" its existence, without evidentiary support, does not qualify as summary judgment evidence. And the fact that an inmate has previously committed a violent act, alone, is insufficient to establish the subjective prong. Nor does Plaintiff explain how Lee knowing Hightower suffered from schizophrenia and took medication for that illness demonstrates that she was or would have been subjectively aware of and disregarded the particular risk of Hightower assaulting Plaintiff.

At best, Plaintiff's argument that Lee reviewed Hightower's mental health file and received the kite from Moore demonstrates she may have been aware of a possible generalized risk. But she took action in response to that generalized concern. *See* Doc. 17-1, at 1; Doc. 22-2, at 19-20; *Farmer*, 511 U.S. at 845 (explaining no liability will attach "if [the official] responded reasonably" to a known risk, "even if the harm ultimately was not averted"). The deliberate indifference

11

standard entails "more than mere negligence" and instead is akin to "subjective recklessness as used in the criminal law." *See Farmer*, 511 U.S. at 835. Plaintiff's contentions and cited evidence amount to arguments that Lee should have acted differently or done more. But these are arguments that Lee acted negligently, not that she acted with subjective deliberate indifference. Plaintiff has not demonstrated a genuine dispute of material fact regarding the subjective component of his Eighth Amendment claim. As such, Lee is also entitled to summary judgment.

*Qualified Immunity*

Defendants further argue they are entitled to qualified immunity. (Doc. 17, at 8-9). They contend the evidence establishes: (1) neither Defendant was informed of a direct threat to Plaintiff; (2) Lee took reasonable steps to abate any potential harm once she was made aware of concerns regarding Hightower; and (3) Henderson was never made aware of any issues regarding Hightower generally or Hightower and Plaintiff specifically. *Id.* ("Because neither Defendant was made aware of a threat to the Plaintiff, nor that Plaintiff was housed in conditions posing a substantial risk, the Defendants are entitled to qualified immunity."). Plaintiff does not directly respond to this argument. (Doc. 22, at 8).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is an affirmative defense; once a defendant raises it, the burden shifts to the plaintiff to demonstrate (1) the defendant's acts violated

12

a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). A "clearly established right" for the purpose of determining whether a public official is entitled to qualified immunity "is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority." *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013). Once a defendant has done so, "[t]he burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (citation and internal quotation omitted).

As to the second prong of the qualified immunity analysis, "[f]or a right to be clearly established, 'existing *precedent* must have placed the statutory or constitutional question beyond debate.'" *Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)). Put differently, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Key*, 179 F.3d at 1000 (citation omitted). "The plaintiff bears the burden of showing that the right was clearly established" and, to meet such a burden, "must provide on-point caselaw that would bind a panel of [the Sixth Circuit]." *Bell*, 37 F.4th at 368; *see also, e.g.*, *Campbell v. Hines*, 2013 WL 7899224, at *4 (6th Cir.) ("[T]he district court properly declined to address the merits of Campbell's equal protection claim, because he failed to respond to the defendants' argument that they were entitled to qualified immunity.").

13

Plaintiff has not satisfied his burden, once qualified immunity was asserted, to "provide on-point caselaw that would bind a panel of [the Sixth Circuit]" as is necessary to demonstrate a clearly established constitutional rights violation here. *Bell*, 37 F.4th at 367-68. In fact, aside from the section describing the summary judgment standard of review, Plaintiff's opposition brief contains no caselaw citations whatsoever. *See generally* Doc. 22.[6] As set forth above, the Court finds Plaintiff has not established a genuine issue of material fact regarding his claimed Eighth Amendment failure-to-protect violation, much less a clearly established violation. As such, Defendants are entitled to qualified immunity and summary judgment. *See Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) ("[B]ecause prisons are dangerous places, housing the most aggressive among us and placing violent people in close quarters, . . . prison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another.") (citation modified).

The Court is not unsympathetic to Plaintiff's plight. But whatever the merit of Plaintiff's belief that Defendants should have taken different action with respect to Hightower, Plaintiff has not pointed to evidence demonstrating a reasonable jury could find either Henderson or Lee subjectively acted with deliberate indifference to his safety or otherwise violated clearly established law.

---

6. Plaintiff's response to Defendants' qualified immunity argument states, in its entirety:

> The argument is that the Warden and her employee Lee had no idea that Hightower was a mentally ill, dangerous inmate. That no one cared to tell them that he murdered another inmate in the Cuyahoga County jail. That the protective custody report, required by their own rules, was passed along to the warden and the mental health advocate at Toledo Correctional.

(Doc. 22, at 8).

14

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment (Doc. 17) be, and the same hereby is, GRANTED; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal of this decision could not be taken in good faith.

                                                                       s/ *James R. Knepp II*
                                                                       UNITED STATES DISTRICT JUDGE

Dated: January 5, 2026